# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 00-2149/2181

_____

Mary E. Lewis,                 *
                                      *
         Appellant/Cross-Appellee,    *
                                      *
     v.                           *   Appeals from the United States
                                      *   District Court for the Eastern
Quentin Wilson, In His Official Capacity*   District of Missouri.
as Director of Revenue of the State of    *
Missouri,                       *
                                      *
         Appellee/Cross-Appellant.    *

_____

Submitted: March 14, 2001

Filed: June 12, 2001

_____

Before MORRIS SHEPPARD ARNOLD and HEANEY, Circuit Judges, and
     BATTEY,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

When Mary Lewis requested a Missouri license plate with the letters "ARYAN-1" in 1983, the Missouri Department of Revenue (DOR) rejected her application. Because the relevant state law in effect at the time permitted the DOR to

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

reject only those requests that were for plates that were obscene or profane, Ms. Lewis sued the DOR, contending that the plate that she requested was neither. Ms. Lewis prevailed, *see Carr v. Director of Revenue*, 799 S.W.2d 124 (Mo. Ct. App. 1990), and the DOR issued her the "ARYAN-1" plate in 1990.

Two years after the *Carr* decision, and evidently in response to it, the Missouri legislature amended the law to state that "[n]o personalized license plates shall be issued ... which are obscene, profane, *inflammatory or contrary to public policy*" (emphasis supplied), *see* Mo. Rev. Stat. § 301.144.2. Two years later still, the DOR received an anonymous letter complaining about Ms. Lewis's plate, and the director of the DOR subsequently decided not to reissue it because, as the DOR's letter to Ms. Lewis put it, the DOR had "determined that the configuration 'ARYAN-1' is contrary to public policy in accordance with the specifications set forth in the statutes."

Ms. Lewis appealed to the Missouri Administrative Hearing Commission, *see* Mo. Rev. Stat. § 621.050.1, which affirmed the DOR's decision. Ms. Lewis then sued the DOR in federal court, contending that the statute authorizing the DOR to refuse to reissue her plate violates the first amendment because it is vague or overbroad, or permits the state to engage in viewpoint discrimination.

On cross-motions for summary judgment, the district court concluded that the DOR's refusal to renew Ms. Lewis's license plate on the ground that it was "contrary to public policy" was unconstitutional. *See Lewis v. Wilson*, 89 F. Supp. 2d 1082, 1089-91 (E.D. Mo. 2000). The district court refused, however, to grant an injunction requiring the DOR to issue the plate, *see id.* at 1091, and also refused to grant Ms. Lewis attorney's fees pursuant to 42 U.S.C. § 1988(b), *see id.* This appeal followed. We affirm the district court's finding of unconstitutionality, but remand the case for the entry of an injunction requiring the DOR to reissue the "ARYAN-1" plate to Ms. Lewis and for an order granting Ms. Lewis attorney's fees.

I.

Although the district court agreed with Ms. Lewis that the Missouri statute allowing the DOR to refuse to issue license plates that are "contrary to public policy" was unconstitutionally overbroad, *see Lewis*, 89 F. Supp. 2d at 1090, the court refused to grant Ms. Lewis an injunction, believing that the DOR might have other, constitutional, reasons for rejecting the plate, *see id.* at 1091. We review *de novo* the district court's legal conclusions, *see United States v. McMasters*, 90 F.3d 1394, 1397 (8th Cir. 1996), *cert. denied*, 519 U.S. 1071, 1099 (1997), but review the denial of an injunction for an abuse of discretion, *see International Association of Machinists and Aerospace Workers v. Soo Line Railroad Co.*, 850 F.2d 368, 374 (8th Cir. 1988) (*en banc*), *cert. denied*, 489 U.S. 1010 (1989).

We ask first whether the DOR's refusal to renew the license plate violated Ms. Lewis's first amendment rights. Because the state of Missouri technically owns the physical metal plate on which Ms. Lewis's message is displayed, the DOR maintains that the plate is a nonpublic forum which gives the state at least a limited right to control the message that the plate contains. *See Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 46-47 (1983). We express some initial skepticism about characterizing a license plate as a nonpublic forum, because it occurs to us that a personalized plate is not so very different from a bumper sticker that expresses a social or political message. The evident purpose of such a "forum," moreover, if it is one, is to give vent to the personality, and to reveal the character or views, of the plate's holder. In any case, we need not determine precisely what kind of forum, if any, a personalized license plate is because the statute at issue is unconstitutional whatever kind of forum a license plate might be.

A restriction on speech is constitutional only if certain principles are adhered to. Among these principles is a requirement that the restriction be specific enough that it does not delegate unbridled discretion to the government officials entrusted to enforce the regulation. *See City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750,

-3-

764 (1988). This case resembles cases like *Cox v. State of Louisiana*, 379 U.S. 536 (1965), that involve statutes requiring a speaker to obtain official permission to engage in a particular type of speech: In *Cox*, 379 U.S. at 556, permission was required to have a parade, and here permission is required to display a message on a license plate. In both *Cox* and this case the relevant statute gave little guidance to the officer entrusted to grant this permission.

These types of laws have generally been held to violate the first amendment. "It is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not ... by use of a statute providing a system of broad discretionary licensing power," *id.* at 557. Where a regulation requires that a speaker receive permission to engage in speech, the official charged with granting the permission must be provided specific standards on which to base his or her decisions. *See Forsyth County, Georgia v. Nationalist Movement*, 505 U.S. 123, 131 (1992). Without such standards, every application of the regulation "creates an impermissible risk of suppression of ideas," *id.* at 129. Contrary to the DOR's assertion, this principle applies with as much force to civil statutes as it does to criminal laws. *See, e.g.*, *Plain Dealer*, 486 U.S. at 764.

For Ms. Lewis to succeed in her challenge to the provision of the statute allowing the rejection of a message because it is "contrary to public policy," she need not show that she was denied the "ARYAN-1" plate because of her viewpoint. "[T]he success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decisionmaker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so," *Nationalist Movement*, 505 U.S. at 133 n.10. Ms. Lewis, therefore, need show only that there was nothing in the ordinance to prevent the DOR from denying her the plate because of her viewpoint.

-4-

We see nothing in § 301.144.2 that prevents the DOR from denying Ms. Lewis the "ARYAN-1" plate because of her viewpoint. The Missouri statute simply authorizes the DOR to reject license plates bearing messages that are "contrary to public policy," language that gives the DOR nearly unfettered discretion in choosing what license plates should be rejected and in deciding what alleged "public policy" supports its decision. As the district court noted, this phrase "is so nebulous and malleable [that it could mean] anything presently politically expedient," *Lewis*, 89 F. Supp. 2d at 1090.

The DOR's actions have themselves supplied proof that the phrase is unconstitutionally broad. The DOR first maintained that the word "Aryan" was itself contrary to public policy because of the message of racial superiority that the DOR asserts that the use of the word "Aryan" implies. *See id.* at 1086 n.3, 1089. As the controversy with Ms. Lewis progressed, however, the DOR changed its "public policy" basis to the present one, namely, that of promoting highway safety by rejecting license plates that could incite so-called road rage, *see id.* at 1086 n.3, 1089-90.

The very fact that the DOR could so readily switch justifications for its rejection of the plate illustrates the constitutional difficulty with the statute. The DOR's first justification was one that, if not blatant viewpoint discrimination, certainly could reasonably appear to have been based on the viewpoint of the speaker. A public official with even marginal creative ability could frequently invent a "public policy" basis for rejecting a plate containing a message with which he or she disagrees. This language thus "creates an impermissible risk of suppression of ideas," *Nationalist Movement*, 505 U.S. at 129, and we therefore affirm the district court's conclusion that the section of § 301.144.2 allowing license plates to be rejected as "contrary to public policy" violates the first amendment.

## II.

We also conclude that the application of the statutory language to Ms. Lewis's case violated the first amendment. The DOR contends that it rejected Ms. Lewis's plate to prevent the occurrence of road rage, a contention that we assume for purposes of this opinion is subjectively sincere. According to the DOR, drivers who are exposed to the "ARYAN-1" plate may become angry, resulting in road rage and thus creating a traffic hazard. *See Lewis*, 89 F. Supp. 2d at 1086 n.3, 1089.

The DOR believes that its concern with highway safety rather than the mere offensiveness of the "ARYAN-1" plate's message brings this case within the rule of *City of Erie v. Pap's A.M.*, 529 U.S. 277 (2000), and cases like it. In *Pap's*, 529 U.S. at 293, 296 (plurality opinion), the Supreme Court upheld a ban on nude dancing where the city showed that the ban was enacted to prevent certain undesirable secondary effects, such as prostitution and crime, and was not primarily aimed at suppressing the message conveyed by nude dancing. We disagree with the DOR's contention. While restrictions of speech because of the secondary effects that the speech creates are sometimes permissible, an effect from speech is not secondary if it arises specifically from the content of the speech. *See Boos v. Barry*, 485 U.S. 312, 321 (1988) (opinion of O'Connor, J.); *see also id.* at 334 (Brennan, J., concurring in part).

The DOR contends that Ms. Lewis's plate may be regulated because it is likely to provoke a violent response. We think, however, that "[t]he only reason why [this] expressive conduct would be especially correlated with violence is that it conveys a particularly odious message; because the 'chain of causation' thus *necessarily* 'run[s] through the persuasive effect of the expressive component' of the conduct" (emphasis in original), the possibility for violence is a primary effect of the message itself. *See R.A.V. v. City of St. Paul, Minnesota*, 505 U.S. 377, 394 n.7 (1992), quoting Justice Souter's concurrence in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 586 (1991). While we do not disagree with the DOR that road rage is a conceivable consequence of the "ARYAN-1" plate, any road rage that might occur would result directly from the

message of racial superiority that the plate would carry in the minds of some who read it. Road rage, therefore, is a primary effect of the plate, a distinction that prevents the statute from being saved under the "secondary effects" rationale of cases like *Pap's*.

Without evidence that Ms. Lewis has intentionally sought to provoke a violent reaction or has directed at a particular individual "personally abusive epithets which ... are ... inherently likely to provoke violent reaction" (i.e., "fighting words"), *Cohen v. California*, 403 U.S. 15, 20 (1971), the mere possibility of a violent reaction to Ms. Lewis's speech is simply not a constitutional basis on which to restrict her right to speak. *See id.* at 23; *see also Nationalist Movement*, 505 U.S. at 134-35. "The argument amounts to little more than the self-defeating proposition that to avoid physical censorship of one who has not sought to provoke such a response by a hypothetical coterie of the violent and lawless, the States may more appropriately effectuate that censorship themselves," *Cohen*, 403 U.S. at 23. Even if we assume that the DOR made no judgment about the viewpoint of Ms. Lewis's speech, therefore, we reject its attempt to censor Ms. Lewis's speech because of the potential responses of its recipients. The first amendment knows no heckler's veto.

### III.

Having determined that the "contrary to public policy" language in § 301.144.2 is unconstitutional, we turn to the district court's denial of an injunction that would require the DOR to issue Ms. Lewis the "ARYAN-1" plate. Although the district court determined that the DOR could not refuse to grant the plate on the ground that it was "contrary to public policy," *Lewis*, 89 F. Supp. 2d at 1091, the court pointed out that that was not the only ground upon which the DOR might deny a plate under § 301.144.2, *see id.* Because the DOR "might still have constitutionally permissible grounds for denying or revoking [Ms. Lewis's] vanity plate," *id.*, the district court refused to grant the injunction. *See id.*

As we have said, the district court correctly determined that the DOR failed in this litigation to advance any constitutional justification for failing to renew Ms. Lewis's plate. This should conclude the inquiry, for "[w]hen the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions," *United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 816 (2000). Ms. Lewis is not required to prove the absence of a constitutional basis for the DOR's action; she is simply required to make the initial showing that her speech has been restricted. Once Ms. Lewis made that showing, the burden fell on the DOR to advance a constitutional justification for its action, which it has failed to do.

The DOR contends that even if the "contrary to public policy" language is unconstitutional, it must nevertheless reject Ms. Lewis's plate because § 301.144.2 also declares that "[n]o personalized license plates shall be issued ... which are ... inflammatory." Even if we were to agree with the DOR that it may now assert a ground on which to deny Ms. Lewis's plate different from the one that it cited in its letter to Ms. Lewis, we would reject this ground as well. Our conclusion in part II of this opinion, holding that to deny Ms. Lewis her plate to prevent road rage was unconstitutional, applies with equal force to a denial of the plate because it is "inflammatory." The DOR may not censor a license plate because its message might make people angry. This provision therefore may not constitutionally be applied to the facts of this case.

Because the DOR has not shown that its denial of the "ARYAN-1" plate was constitutional, the district court abused its discretion by refusing to grant an injunction requiring the DOR to issue the plate. We therefore remand the case to the district court for the issuance of such an injunction. Because Ms. Lewis is entitled to an injunction, furthermore, she is a "prevailing party" entitled to attorney's fees pursuant to 42 U.S.C. § 1988(b).

IV.

For the foregoing reasons, we affirm the judgment of the district court in part and reverse it in part, and remand the case for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.