# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3334

_____

| | | |
|---|---|---|
| Union Pacific Railroad Company, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeals from the United States |
| | * | District Court for the Southern |
| Kirby Inland Marine, Inc. of | * | District of Iowa |
| Mississippi, a/k/a/ Brent | * | |
| Transportation Company, in | * | |
| personam and the M/V Miss Dixie, | * | |
| its engines, tackle, fixtures and | * | |
| appurtenances, etc., in rem, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: May 13, 2002
Filed:

_____

Before BOWMAN, BYE, Circuit Judges, and NANGLE,[1] Senior District Judge.

_____

NANGLE, Senior District Judge.

Appellant Union Pacific Railroad Company appeals from the district court's

_____

[1] The HONORABLE JOHN F. NANGLE, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

conclusions of law and final judgment in the instant case. For the reasons discussed below, we reverse in part and affirm in part the district court's opinion.

## I. Background

A. Background Facts

The parties stipulated to the following underlying facts. The Clinton Railroad Bridge (the "Clinton Bridge"), was constructed in 1907. Pursuant to 33 U.S.C. § 401, the construction of the Clinton Bridge was authorized by and constructed in accordance with permits issued by the United States Coast Guard. Appellant is the owner and operator of the Clinton Bridge.

Kirby Inland Marine, Inc. ("Kirby") is the owner and operator of the M/V MISS DIXIE, a river barge towboat in operation on the Mississippi River. On May 5, 1996, the M/V MISS DIXIE and/or its tow allided with the Clinton Bridge causing damage to the bridge and the M/V MISS DIXIE. On October 10, 1999, Appellant filed the instant action alleging the damage to its bridge was caused by the negligence of the crew of the M/V MISS DIXIE and/or by the unseaworthiness of that vessel. Appellees denied that the crew was negligent or that the vessel was unseaworthy and asserted that Appellant itself was negligent in the construction, design, care and maintenance of the Clinton Bridge.

To prove Appellant's negligence, Appellees proffered a Coast Guard's Order to Alter, issued on February 28, 1996, which found that the Clinton Bridge was "an unreasonable obstruction to navigation." The Order to Alter was issued pursuant to the Truman-Hobbs Act, 33 U.S.C. §§ 511-524, which authorizes the United States Coast Guard to investigate whether a bridge is unreasonably obstructing navigation and to order a bridge owner to alter a bridge which does indeed unreasonably obstruct navigation.

The parties entered into a settlement agreement; however, the agreement was predicated on the district court deciding one specific legal issue: "Does the Truman-Hobbs Act finding that the bridge is 'an unreasonable obstruction to navigation' render inapplicable any presumption that negligence of the barge crew was the cause of an allision between a moving vessel and a stationary bridge." Union Pac. R.R. Co. v. Kirby Inland Marine et. al, No. 3-99-CV-80185, slip op. at 1 (S.D. Iowa Aug. 13, 2001) The presumption in question is the longstanding Oregon rule which raises a presumption that a vessel's crew was negligent when a vessel strikes a stationary object such as a bridge. The Oregon, 158 U.S. 186, 197 (1895). Under the parties' settlement agreement, if the district court concluded that the Oregon rule does apply, then Kirby would pay an agreed amount; alternatively, if the district court concluded that the Oregon rule does not apply, then Kirby would pay a smaller agreed amount. Thus, the primary issue before the district court was whether the Coast Guard's Order to Alter trumps the Oregon rule.

B. District Court's decision

Although the district court initially stated that the Oregon rule should apply, the district court eliminated the presumption by invoking the Pennsylvania rule which is another longstanding admiralty principle. Under the Pennsylvania rule, "[w]here any party violates a statutory or regulatory rule designed to prevent collisions, that party has committed per se negligence . . . and [that party] has the burden of proving that its statutory fault was not a contributing cause of the accident." Union Pac. R.R. Co. v. Kirby Inland Marine et. al, No. 3-99-CV-80185, slip op. at 3 (S.D. Iowa Aug. 13, 2001) (citing The Pennsylvania, 86 U.S. 125, 136 (1873)). The district court concluded that Appellant violated 33 U.S.C. § 512 of the Truman-Hobbs Act which states that "No bridge shall at any time unreasonably obstruct the free navigation of any navigable waters of the United States." 33 U.S.C. § 512. The district court found that a violation of § 512 is sufficient to invoke the Pennsylvania rule and thus "the normal presumption of fault that attaches to the vessel under the Oregon rule is

3

shifted back to the structure owner under the <u>Pennsylvania</u> rule." <u>Union Pac.</u>, at *3.

The district court also concluded that the Coast Guard's Order to Alter was admissible pursuant to Federal Rules of Evidence 402 and 803(8)(C). <u>Id</u>. at 4. Appellant filed a timely notice of appeal and now asserts that the district court erred by concluding that: (1) the <u>Oregon</u> rule does not apply to the instant case, and (2) the Order to Alter is admissible.

## II.  Discussion

### A.  The <u>Oregon</u> Rule

We will first consider whether the district court erred by invoking the <u>Pennsylvania</u> rule to trump the <u>Oregon</u> rule and shift the burden of persuasion back to Appellant.  We review the district court's conclusions of law de novo.  <u>Wiles v. Capitol Indem. Corp.</u>, 280 F.3d 868, 870 (8th Cir. 2002) (citing <u>Lewis v. Wilson</u>, 253 F.3d 1077, 1079 (8th Cir. 2001)).

For the <u>Pennsylvania</u> rule to apply, three elements must exist: (1) proof by a preponderance of the evidence of violation of a statute or regulation that imposes a <u>mandatory duty</u>; (2) the statute or regulation must involve <u>marine safety</u> or navigation; and (3) the injury suffered must be of a nature that the statute or regulation was intended to prevent.  <u>Folkstone Mar. Ltd. v. CSX Corp.</u>, 64 F.3d 1037, 1047 (7th Cir. 1995) (emphasis added).  The Truman-Hobbs Act does not satisfy the prerequisites of the <u>Pennsylvania</u> rule because it was not drafted: (1) to maintain marine safety; (2) to impose a specific duty; or (3) to prevent a specific sort of injury.

We find that the Truman-Hobbs Act is a funding statute and not a safety statute.  Congress stated that it drafted the Truman-Hobbs Act "to provide an orderly method for the just apportionment of the cost of the reconstruction or alteration of

4

bridges over navigable waters where navigation conditions require such reconstruction or alteration of bridges heretofore built in accordance with law. . . ." House Report No. 1447, August 2, 1939, 76th Cong. 1st Sess.

The regulations implementing the Truman-Hobbs Act establish a lengthy administrative procedure for determining whether a bridge is "an unreasonable obstruction to navigation." See 33 C.F.R. § 116.01-116.55 (setting out complaint process, preliminary investigation, detailed investigation, public hearing, and administrative review). Ultimately, the Chief Officer of the Bridge Administration (the "Chief") performs a cost/benefit analysis to determine whether the benefits to navigation exceed the government's cost of altering the bridge. 33 C.F.R. § 116.30. If the benefits exceed the costs, then the Chief recommends that the Coast Guard issue an Order to Alter stating that the bridge unreasonably obstructs navigation. Id. Once the Coast Guard concludes that a bridge is an unreasonable obstruction to navigation, the bridge owner must: (1) submit plans and specifications for altering the bridge; (2) solicit and submit bids; and (3) request an Apportionment of Costs which outlines which costs will be borne by bridge owner and the United States government. See 33 U.S.C. §§ 514-516; 33 C.F.R. §§ 116.40, 116.45, 116.50.

Looking at the Truman-Hobbs Act as a whole, a § 512 finding that a bridge is an "unreasonable obstruction to navigation" is not a direct comment on the safety of the bridge. Instead, the Coast Guard labels a bridge an unreasonable obstruction in order to facilitate the funding process. Accordingly, we conclude that the Truman-Hobbs Act does not satisfy the first element of the Pennsylvania rule because it was not drafted to protect marine safety, but to establish a procedure to provide government funds to assist bridge owners in altering their bridges.

The Truman-Hobbs Act also does not satisfy the other two prerequisites of the Pennsylvania rule as it does not impose a specific duty or prevent a specific sort of injury. Once the Coast Guard concludes that a bridge violates § 512, the bridge

5

owner is required only to prepare a plan for altering the bridge. This "duty" is very different from a duty to maintain lights and signals on a bridge or to promptly open a draw. See 33 U.S.C. § 494 (requiring a bridge owner to maintain "such lights and other signals thereon as the Commandant of the Coast Guard shall prescribe" and to promptly open such draw upon reasonable signal for the passage of boats and other water craft). With respect to the latter duties, the application of the Pennsylvania rule is justified because a bridge owner greatly increases the risk of allision by failing to promptly open a draw or by neglecting to maintain the bridge's lights. Conversely, a bridge owner's failure to prepare a plan for altering a bridge will delay the funding process, but will not directly increase the risk of allision.

Also, the goal of the Truman-Hobbs Act was to decrease the cost of navigation by using government funds to alter bridges which unreasonably obstruct such navigation. Although the bridge alterations may reduce the amount of allisions, this is a collateral consequence and not a direct purpose of the Truman-Hobbs Act. To state it another way, the Truman-Hobbs Act was not designed to prevent any specific type of injury. Thus, any injury suffered in admiralty is not "of a nature that the [Truman-Hobbs Act] was intended to prevent." Folkstone Mar. Ltd. v. CSX Corp., 64 F.3d 1037, 1047 (7th Cir. 1995).

In concluding that the district court incorrectly invoked the Pennsylvania rule, we further note that the district court did not cite a single case in which a court applied the Pennsylvania rule solely because a bridge violated the Truman-Hobbs Act. In Nassau County Bridge Authority v. Tug Dorothy McCallister, 207 F. Supp. 167, 172 (E.D.N.Y. 1962), the district court applied the Pennsylvania rule because the bridge tender violated 33 U.S.C. §§ 494 by failing to promptly open a draw for an approaching ship. In Folkstone Maritime, Limited v. CSX Corp., 64 F.3d 1037, (7th Cir. 1995), the court applied the Pennsylvania rule because the bridge owner violated 33 U.S.C. § 491 which provides that "it is unlawful for a bridge to deviate

from its plans and specifications for its construction . . . unless the modification of the bridge is previously submitted to and approved by the Secretary of Transportation." The Folkstone court concluded that the bridge owner violated § 491 by failing to abide by the Coast Guard's order to construct a draw which could be raised to 83 degrees. Folkstone, 64 F.3d at 1048-49. Unlike the present case, Nassau and Folkstone involve active negligence on the part of bridge owners.

Although these cases cited § 512, neither court explained how a violation of that particular statute served to invoke Pennsylvania rule.[2] Accordingly, we find that the district court did not present any authority to support its conclusion that a violation of the Truman-Hobbs Act invokes the Pennsylvania rule.

We will not invoke the Pennsylvania rule to punish a bridge owner who controls a lawful bridge. Under the Truman-Hobbs Act, a bridge labeled an unreasonable obstruction is still a lawful bridge. 33 U.S.C. § 511. In order to obtain funding under the Truman-Hobbs Act, the bridge must be "lawful" and used as a railroad or a public highway. Id. To maintain a lawful bridge, bridge owners must abide by the laws and regulations governing bridges. The Clinton Bridge was built in 1907 in accordance with then-current Department of Transportation procedures and it currently complies with the Coast Guard's regulations. Appellees do not assert that Appellant caused this allision through active negligence; instead, they fault the bridge owner for failing to alter the Clinton Bridge to accommodate the ever-increasing size of commercial barges and tows. We will not employ the Pennsylvania rule to punish a bridge owner who maintains a lawful bridge, even though the Coast Guard has found such a bridge to be an unreasonable obstruction due to the barge industry's expansion of the size of its commercial vessels.

---

[2] The district court also cited City of Boston v. S.S. Texaco Texas, 773 F.3d 1396 (1st Cir. 1985) to support its application of the Pennsylvania rule; however, the City of Boston case does not discuss the Pennsylvania rule so we will not discuss it here.

In sum, we find that the district court should not have relied on a violation of the Truman-Hobbs Act to invoke the <u>Pennsylvania</u> rule. Accordingly, the district court erred by concluding that a violation of § 512 invokes the <u>Pennsylvania</u> rule and shifts the burden of persuasion back to Appellant. Instead, the district court should have applied the <u>Oregon</u> presumption.

We now address Appellees' assertion that we should affirm the district court's judgment because the Coast Guard's declaration that the bridge is an unreasonable obstruction to navigation rebuts the <u>Oregon</u> presumption and shifts the burden of proof back to the bridge owner. In order to affirm the district court's judgment, we would have to conclude, as a matter of law, that the Coast Guard's Order to Alter rebuts the <u>Oregon</u> presumption. Because we believe the trier of fact should determine whether the <u>Oregon</u> presumption is rebutted by the Coast Guard's Order to Alter, we cannot affirm the district court's legal conclusion that the <u>Oregon</u> rule does not apply.

Appellees rely on <u>I &M Rail Link, LLC v. Northstar Navigation, Inc</u>, 198 F.3d 1012 (7th Cir. 2000) to support their position that the Coast Guard's Order to Alter rebuts the <u>Oregon</u> presumption and shifts the burden of proof back to the bridge owner. The Seventh Circuit case is strikingly similar to the case at bar as it arose from an allision between a large seagoing vessel and the Sabula Bridge, a century-old railroad bridge. <u>Id</u>. at 1013. Ten months prior to the allision, the Coast Guard had issued an Order to Alter finding that the Sabula Bridge was "an unreasonable obstruction to navigation." <u>Id</u>. at 1014. The district court applied the <u>Oregon</u> presumption and granted summary judgment against the defendant vessel. <u>Id</u>. Although the defendant "sought to rebut the <u>Oregon</u> presumption by arguing that the Sabula Bridge is an unreasonable obstruction to navigation," the district court decided to ignore the Coast Guard's Order to Alter because it was part of the Truman-Hobbs Act and therefore had no significance in a negligence action. <u>Id</u>. The Seventh Circuit disagreed.

Writing for the panel, Judge Easterbrook reversed the district court's grant of

8

summary judgment and remanded the case for trial because the defendant presented sufficient evidence to raise a question of fact on the issue of negligence. Judge Easterbrook noted that the Coast Guard's Order to Alter was not an "unelaborated ukase," but a conclusion based on evidence that: (1) the Sabula Bridge repeatedly is struck; and (2) the bridge's outdated structure does not allow modern-day vessels to navigate easily through the bridge. Id. at 1015-16. Ultimately, Judge Easterbrook concluded that:

> If the Coast Guard may find the Sabula Bridge an unreasonable obstruction based on the cost and accident data, then so may the trier of fact in admiralty . . . . Findings in the Coast Guard's report are more than adequate to overcome The Oregon's presumption. . . . The trier of fact must give an answer without resort to presumptions. Although the Coast Guard's findings may well be conclusive for some purposes . . . the question remains whether the shortcomings of the bridge caused this accident.

Id. at 1016 (emphasis added) (citations omitted).

Appellees maintain that the I & M Rail Link case stands for the proposition that, as a matter of law, the Coast Guard's Order to Alter rebuts the Oregon presumption and thus the litigation should proceed on a level playing field. This view seems to be based on the single sentence "The trier of fact must give an answer without resort to presumptions." We, however, interpret the Seventh Circuit's opinion differently.

In our view, the I & M Rail Link case stands for the proposition that a defendant can attempt to rebut the Oregon presumption by presenting evidence that the Coast Guard labeled the bridge an "unreasonable obstruction to navigation."

9

Under I & M Rail Link, a Coast Guard Order to Alter is not conclusive evidence of negligence, but merely another piece of evidence which the trier of fact may consider in determining fault in a negligence action.  See I & M Rail Link, 198 F.3d at 1016 ("Although the Coast Guard's findings may well be conclusive for some purposes . . . the question remains whether the shortcomings of the bridge cause this accident."). Our interpretation is shared by the lower court which, on remand, tried the case in accordance with the Seventh Circuit's opinion.  See I & M Rail Link v. Northstar Navigation, No. 98-C-50359, 2001 WL 460028, at *4 (N.D. Ill. April 27, 2001) ("It is true the Seventh Circuit referred to the previous accidents at the Sabula Bridge included in the Coast Guard's reports, and said the trier of fact may find the Sabula Bridge an unreasonable obstruction based on the Coast Guard's cost and accident data. . . . But it did so in the context of explaining its holding on a rather narrow issue: that this evidence could be used to rebut the presumption of The Oregon . . . .") (emphasis added).  To the extent that the I & M Rail Link case can be interpreted to hold that a Coast Guard's Order to Alter rebuts and overcomes the Oregon presumption, as a matter of law, we respectfully disagree.

Our interpretation of I &M Rail Link is in accordance with longstanding precedent which allows a moving vessel to rebut the Oregon presumption by presenting evidence that the bridge was an unreasonable obstruction to navigation. Wilmington Ry. Bridge Co. v. Franco-Ottoman Shipping Co., 259 F. 166, 168 (4th Cir. 1919).  In Wilmington Ry. Bridge Co., the Fourth Circuit stated that the Oregon presumption may be rebutted:

> by proof that the location of the stationary vessel, the obstruction of navigation by the bridge, or other causes had brought the moving vessel into an emergency not to be reasonably foreseen, and that the course taken by the navigator in the emergency was such as might well have been taken by a prudent and skillful navigator.

<u>Id</u>. (emphasis added).

In its own words, the district court stated that "[t]he single <u>legal</u> question they ask this court to answer is: Does the Truman-Hobbs Act finding that the bridge is "an unreasonable obstruction to navigation" render inapplicable any presumption that negligence of the barge crew was the cause of a collision between a moving vessel and a stationary bridge?" <u>Union Pac.</u>, No. 3-99-CV-80185 at 1. To state it another way, the district court was considering whether, as a matter of law, a Truman-Hobbs Act finding trumps the <u>Oregon</u> presumption. We conclude that a Truman Hobbs Act finding does not render inapplicable the <u>Oregon</u> rule and therefore reverse the district court's conclusion to the contrary in this case.

In remanding we recognize that Appellees have produced evidence regarding the "obstructive character" of the Clinton Bridge. Appellees note that the Coast Guard's Detailed Report: (1) documents more than 300 allisions between the Clinton Bridge and various vessels in a ten year period; (2) emphasizes the fact that the Clinton Bridge is out of date and does not permit the smooth navigation of modern-day commercial vessels; and (3) criticizes the poor position of the Clinton Bridge.[3] The parties, however, did not ask the district court to consider whether Appellees presented sufficient evidence to rebut the <u>Oregon</u> presumption; thus, that question is not currently before this Court. Instead, the parties posed the single legal question of whether a Truman-Hobbs Act finding that a bridge is an unreasonable obstruction to navigation renders inapplicable the <u>Oregon</u> presumption. We conclude that the answer to that particular question is "no."

Accordingly, we find that the district court erred by concluding as a matter of law that the <u>Oregon</u> presumption does not apply. <u>See Wilmington Ry. Bridge Co. v. Franco-Ottoman Shipping Co.</u>, 259 F.2d 166, 168 (4th Cir. 1919). The opinion of

---

[3] We note that the Coast Guard's detailed report was not included in the parties' Stipulated Facts.

the district court is reversed.

## B. Federal Rule of Evidence 803(8)(C)

Appellant also asserts that the district court erred by admitting the Coast Guard's Order to Alter into evidence.[4] We review the district court's evidentiary rulings "under the abuse of discretion standard, according the district court substantial deference." Gagnon v. Sprint Corp., 284 F.3d 839, 856 (8th Cir. 2002) (citing Shelton v. Consumer Prods. Safety Comm'n, 277 F.3d 998, 1009 (8th Cir. 2002). In its opinion, the district court specifically stated that the "[t]he Coast Guard findings are admissible under Federal Rules of Evidence 402 and 803(8)(C)." Union Pac. R.R. Co. v. Kirby Inland Marine et. al, No. 3-99-CV-80185, slip op. at 4 (S.D. Iowa Aug. 13, 2001). The court further concluded that the findings are "trustworthy" because "they are based on factual investigation, and they are directly relevant to the issues here." Id.

Rule 803(8)(C) of the Federal Rules of Evidence defines the "public records and reports" which are not excludable under the hearsay rule. Rule 803(8)(C) specifically excludes "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." In Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 170, 109 S. Ct. 439, 450, 102 L.Ed. 2d 445 (1988), the Supreme Court specifically concluded that opinions, conclusions, and findings of fact are admissible under Rule 803(8)(C). The Court further stated that "[a]s long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." Id.

---

[4] Although Appellant seems to oppose the district court's admission of other documents, we find that the district court's opinion relates only to the February 28, 1996 Order to Alter. See Union Pac. R.R. Co. v. Kirby Inland Marine et. al, No. 3-99-CV-80185, judgment (S.D. Iowa Aug. 13, 2001).

The party opposing the admission of the report has the burden of proving the report's untrustworthiness. Moss v. Ole South Real Estate, Inc., 933 F.2d 1300, 1304 (5th Cir. 1991). When considering whether a report is trustworthy, the court should not consider whether the report is credible, but rather should consider whether the report is reliable. Id. at 1306-07. "The Rule 803 trustworthiness requirement, therefore, means that the trial court is to determine primarily whether the report was compiled or prepared in a way that indicates that its conclusions can be relied upon." Id. at 1307.

We find that the district court did not abuse its discretion by concluding that the Coast Guard's Order to Alter is admissible pursuant to Rule 803(8)(C). The Coast Guard's investigation into the Clinton Bridge was mandated by law. See 33 C.F.R. § 116.10 ("Upon receipt of a written complaint, the District Commander will review the complaint to determine if . . . the complaint is justified and whether a Preliminary Investigation is warranted."). As was discussed above, the Truman-Hobbs Act established a thorough review process to determine whether a bridge should be altered because it is an unreasonable obstruction to navigation. This process includes a preliminary investigation, detailed investigation, public hearing, and an administrative review. See 33 C.F.R. §§ 116.01-116.55. The fact that Coast Guard investigators relied on hearsay evidence to reach their conclusions does not mean that the preparation of the report was untrustworthy. Moss, 933 F.2d at 1309.

In sum, Appellant has not presented any evidence that the Coast Guard's Order to Alter contained findings and conclusions which were untrustworthy. Accordingly, we conclude that the district court did not abuse its discretion by admitting the document, and we therefore affirm the district court's conclusion to admit the Order to Alter into evidence.

### III. Conclusion

For the foregoing reasons, the district court's conclusions of law and final

judgment are reversed in part and affirmed in part.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

14