# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3503

_____

Martin Wishnatsky,                              *
                                                *
            Appellant,                          *
                                                *   Appeal from the United States
        v.                                      *   District Court for the District
                                                *   of North Dakota.
Laura Rovner, Director, Clinical                *
Education Program, University of                *
North Dakota School of Law, in her              *
individual and official capacities,             *
                                                *
            Appellee.                           *
                                                *
_____                             *
                                                *
Association of American Law Schools,            *
                                                *
    Amicus on Behalf of Appellee,               *
                                                *
Clinical Legal Education Association;           *
Society of American Law Teachers;               *
Georgetown University Law Center                *
Clinical Program,                               *
                                                *
    Amici on Behalf of Appellee.                *

_____

Submitted: April 13, 2005
Filed: January 5, 2006

_____

Before COLLOTON, McMILLIAN, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Martin Wishnatsky brought an action pursuant to 42 U.S.C. § 1983 against Laura Rovner, the director of the University of North Dakota School of Law's Clinical Education Program, alleging that she had violated his rights under the First Amendment, and seeking declaratory and injunctive relief. The district court granted Rovner's motion for judgment on the pleadings, and Wishnatsky appealed. We reverse and remand for further proceedings.

I.

Martin Wishnatsky is a resident of Fargo, North Dakota, with a history of commenting on matters of public concern. As director of the Clinical Education Program at the University of North Dakota School of Law ("Clinic"), Laura Rovner drew Wishnatsky's attention in 2002, when she appeared with her students on behalf of North Dakota State University clients who were requesting the removal of a Ten Commandments monument from city property.[1] In a letter to the editor of the *Grand Forks Herald*, Wishnatsky identified Rovner as the head of the Clinic and criticized the Ten Commandments suit as an inappropriate use of public funds.

In 2003, Wishnatsky sought to advance his own First Amendment lawsuit, and he contacted Rovner and the Clinic for assistance. In a letter dated October 29, 2003, Wishnatsky wrote that he was "distress[ed]" by Grand Forks County's display of the

_____

[1]Since the district court's entry of judgment, Ms. Rovner has left the University of North Dakota and is no longer employed as the Clinic's director. Insofar as this action seeks relief against Rovner in her official capacity, it continues automatically against her successor in office. Fed. R. Civ. P. 25(d).

goddess Themis at the top of the county courthouse, and that he felt "like a second-class citizen" when he encountered such "pagan religious figures" in public places. He requested assistance "developing a lawsuit on the same basis as that granted to the atheistic North Dakota State University professors" who brought suit over the Ten Commandments monument. (Add. at 10).

On November 12, 2003, Rovner responded on behalf of the Clinic and denied Wishnatsky's request for representation. In the letter, she wrote that "due to the high demand for our legal services coupled with our current caseload and limited resources, the Civil Rights Project is unable to accept any new cases at this time." (Add. at 12). She also indicated that "even if the lack of resources did not preclude" representation, "ethical obligations under the North Dakota Rules of Professional Conduct would prohibit" the Clinic's representation of Wishnatsky. According to Rovner, "your persistent and antagonistic actions against the Clinical Education Program and faculty involved would adversely affect our ability to establish an effective client-attorney relationship with you and would consequently impair our ability to provide legal representation." (Add. at 12).

Wishnatsky responded to the denial of legal services with the instant lawsuit. In an amended complaint, filed pro se on January 26, 2004, he brought suit against Rovner in her individual and official capacities under 42 U.S.C. § 1983, alleging that her "refusal of legal representation to [Wishnatsky] on the basis of criticism of the Clinical Education Program and its director violates the Free Speech and Equal Protection Clauses of the United States Constitution." Rovner filed an answer and then moved for judgment on the pleadings. The district court granted the motion on July 29, 2004, and then denied Wishnatsky's motion to alter or amend judgment in September 2004. This appeal followed.

II.

When evaluating a motion for judgment on the pleadings, a court must accept as true all factual allegations set out in the complaint, and must construe the complaint in the light most favorable to the plaintiff, drawing all inferences in his favor. *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004). Judgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law. We review the district court's decision *de novo*. *Id.*

Wishnatsky asserts that despite Rovner's professed reasons for declining to provide him with legal representation, the Clinic actually denied services to him because of his criticism of the Clinic and its director. Rovner and the Clinic argue that Wishnatsky did not properly allege in his complaint that the Clinic's stated reasons for denying representation – its insufficient resources and ethical concerns – were pretextual, and that his action cannot proceed on a theory of pretext. We reject this constricted reading of Wishnatsky's complaint as inconsistent with the requirement that pro se complaints be construed even more liberally than counseled pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam). Wishnatsky's amended complaint alleged that he had commented about the Clinical Education Program in the Grand Forks newspaper, and the Clinic concedes that the district court properly considered the substance of these publications, in which Wishnatsky criticized the Clinic's use of public funds to advance "the Ten Commandments lawsuit." (Appellee's Br. at 4-6). The complaint then specifically alleges that the "refusal of legal representation to Plaintiff on the basis of criticism of the Clinical Education Program and its director violates the Free Speech and Equal Protection Clauses of the Constitution." (Am. Compl. ¶ 7; Addendum at 14). This statement is sufficient to give the defendants "fair notice of the nature and basis" of Wishnatsky's claim, and it therefore meets the

requirements of Federal Rule of Civil Procedure 8(a). *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 714 (8th Cir. 1979).

Having construed Wishnatsky's complaint, we must consider his allegation that the Clinic refused to permit him to participate as a client in the clinical program because of his previously expressed views about the Clinic, its director, and its lawsuit challenging a public display of the Ten Commandments. Accepting this allegation as true for purposes of a motion for judgment on the pleadings, we conclude that the district court erred in dismissing Wishnatsky's complaint.

While insisting that the evidence will show that the Clinic did not exclude Wishnatsky based solely on his speech and expression, the Clinic does assert, as a legal position in support of its motion, that it *may* exclude persons from the program solely on the basis of their viewpoint. Taken to its logical conclusion, the Clinic's argument means that a public law school could announce that its clinical program will accept as clients only persons who belong to one political party or espouse particular views on controversial issues of the day. We reject that proposition as inconsistent with the First Amendment.

"Discrimination against speech because of its message is presumed to be unconstitutional," and viewpoint discrimination is "an egregious form of content discrimination." *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828-29 (1995). We have said flatly, in light of fifty years of Supreme Court precedents, that denial of participation in a state-sponsored program based on the party's beliefs or advocacy is unconstitutional:

> Even though a person has no "right" to a valuable government benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that

> infringes his constitutionally protected interests – especially, his interest
> in freedom of speech.

*Cuffley v. Mickes*, 208 F.3d 702, 707 (8th Cir. 2000) (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).  This doctrine is "not limited to valuable government benefits or even benefits at all," *id.* at 707 n.5, and we have held in recent years, for example, that a State may not deny access to an Adopt-A-Highway program or a vanity license plate program based on an applicant's views.  *Id.* at 706 n.3; *Robb v. Hungerbeeler*, 370 F.3d 735, 741 (8th Cir. 2004); *Lewis v. Wilson*, 253 F.3d 1077, 1081-82 (8th Cir. 2001).  Excluding a prospective client from consideration for government-funded legal services simply because he has engaged in protected speech that the director of the program finds disagreeable violates these principles.[2]

The Clinic contends that because Wishnatsky had no "pre-existing commercial relationship" with the program, the prohibition on viewpoint discrimination does not apply.  This argument is premised on the Supreme Court's statement in *Board of County Commissioners v. Umbehr*, 518 U.S. 668 (1996), after holding that First Amendment scrutiny *did* apply to a county's decision to terminate a relationship with an independent contractor, that "we need not address the possibility of suits by bidders or applicants for new government contracts" who cannot rely on a pre-existing

---

[2]The district court analyzed Wishnatsky's claim as a retaliation claim, and concluded Wishnatsky, to state a claim, must demonstrate an injury that would "'likely chill a person of ordinary firmness from continuing to engage in that activity.'"  (Add. at 8) (quoting *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)).  The Clinic does not defend the district court's judgment on this basis, but argues only that the absence of a "chilling effect" shows that the Clinic did not deny Wishnatsky a valuable government benefit.  *But see Cuffley*, 208 F.3d at 707 n.5.  While a requirement of a "chilling effect" would be part of the analysis if Wishnatsky had alleged only that the government took retaliatory action against him because of his speech, *e.g.*, *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003), such a showing is not necessary to state a claim that the Clinic discriminated against Wishnatsky by denying access to the program on account of his viewpoint.

commercial relationship. *Id.* at 685. The Court has never held, however, that a public entity may exclude bidders or applicants for government contracts based solely on their views, and that remains an open question.

We are not persuaded that the Court's mere reservation of the question concerning aspiring public contractors in *Umbehr* signals that a law school clinical program may discriminate against applicants for services based on their private speech. We have not required a pre-existing relationship before requiring a State to refrain from viewpoint discrimination against prospective program participants in other areas, *see Robb,* 370 F.3d at 743-44; *Cuffley*, 208 F.3d at 712, and even if such a rule were to develop in the area of government contracts, it likely would be motivated by concerns about the judiciary "intrud[ing] itself into such traditional practices as contract awards by the government's executive, be it on a federal, state or local level." *McClintock v. Eichelberger*, 169 F.3d 812, 817 (3d Cir. 1999) (internal quotation omitted). No concern about the operation of traditional government functions supports a rule that permits institutions of higher education – traditionally bastions of free speech and the vigorous exchange of ideas – to discriminate on the basis of viewpoint in the administration of a clinical legal program.

The Clinic and *amici* advance other reasons why it was permissible to deny Wishnatsky's request for assistance. These include insufficient resources, the "academic freedom" of a clinical professor to determine which cases and clients are best for a clinical curriculum, the alleged insincerity of Wishnatsky's request, and ethical concerns founded on "personal conflict" between Rovner and Wishnatsky. We think the Clinic overstates the latter point by suggesting that an attorney is prohibited by ethical rules as a matter of law from representing a person who previously criticized the attorney, without consideration as to whether a fresh start, common purpose, and agreement to bury the hatchet might overcome previous discord. We recognize, however, that a clinical education program is not the equivalent of a public

legal aid program, and we do not gainsay that the foregoing considerations, under appropriate circumstances, are legitimate reasons to decline representation of a particular applicant. Nor do we quarrel with the suggestion that decisions of a clinical program about which cases and clients to accept in an academic environment should be entitled to substantial deference. But these are factual defenses to Wishnatsky's claim, both as to whether the Clinic was motivated at all by Wishnatsky's viewpoint and whether any such motivation was a substantial factor in the denial of his opportunity to participate in the program. *See Umbehr*, 518 U.S. at 685; *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 286-87 (1977). They are not sufficient grounds to justify dismissal of the complaint on a motion for judgment on the pleadings, even assuming that the defenses were properly pleaded. Wishnatsky alleges that he was denied participation strictly because of his speech, and taking that allegation as true, he has stated a claim for a violation of his constitutional rights.

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____