NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2012-624


DAVID MONTENEGRO

v.

NEW HAMPSHIRE DIVISION OF MOTOR VEHICLES

Argued: November 7, 2013
Opinion Issued: May 7, 2014


David Montenegro, self-represented party, by brief and orally.


Michael A. Delaney, attorney general (David M. Hilts, assistant attorney general, on the brief, and Richard W. Head, associate attorney general, orally), for the respondent.


Nixon Peabody LLP, of Manchester (David A. Vicinanzo and Anthony J. Galdieri on the brief, and Mr. Galdieri orally), for New Hampshire Civil Liberties Union, as amicus curiae.


CONBOY, J. The petitioner, David Montenegro, appeals an order of the Superior Court (Lewis, J.) dismissing his petition for injunctive relief seeking to compel the respondent, New Hampshire Division of Motor Vehicles (DMV), to

issue him a personalized vanity motor vehicle registration plate reading "COPSLIE," and arguing that the DMV's denial of his request violated his right to free speech. Because we find that the regulation relied upon by the DMV in denying the petitioner's request is unconstitutionally vague, we reverse and remand.

I.    Background

On May 4, 2010, the petitioner applied for a vanity registration plate reading "COPSLIE." See RSA 261:89 (Supp. 2013). The petitioner stated on his application that the intended meaning of the requested vanity registration plate was "cops lie." That same day, the petitioner's application was rejected because several DMV employees believed the text to be "insulting."

The petitioner appealed to the director of the DMV by letter dated May 5, 2010. See N.H. Admin. Rules, Saf-C 514.61(e). On May 12, the director denied the petitioner's appeal, citing the New Hampshire Code of Administrative Rules, Saf-C 514.61. He concluded that "a reasonable person would find COPSLIE offensive to good taste." See N.H. Admin. Rules, Saf-C 514.61(c)(3) ("[a] vanity . . . registration plate shall . . . [n]ot be ethnically, racially or which a reasonable person would find offensive to good taste").

On July 9, the petitioner wrote to the commissioner of safety seeking reconsideration of the DMV's decision concerning his application for the vanity registration plate. On July 14, the commissioner's office responded to the petitioner, explaining that the commissioner had reviewed the petitioner's letter and agreed with the DMV's "decision to deny the license plate, for the same reasons which were set forth" by the director.

On August 30, the petitioner again applied for a vanity registration plate. This time, he listed "COPSLIE" as his first choice, but also provided alternative choices, in order of preference, as follows: "GR8GOVT," "LUVGOVT," "GOVTSUX," "SEALPAC," and "GOVTLAZ." The DMV denied the petitioner's first choice as "insulting," but issued the petitioner a vanity registration plate with the alternative text "GR8GOVT." That same day, the petitioner surrendered the "GR8GOVT" vanity registration plate for standard registration plates.

Thereafter, the petitioner sought an injunction directing the DMV to issue him a vanity registration plate with the text "COPSLIE," as well as a permanent injunction enjoining the DMV from recalling the vanity registration plate. He also argued that Saf-C 514.61(c)(3) violates the right to free speech guaranteed under both Part I, Article 22 of the New Hampshire Constitution and the First Amendment to the United States Constitution. By order dated July 3, 2012, the trial court upheld the DMV's denial of the petitioner's

2

requested vanity registration plate, finding no violation of the petitioner's right to free speech under the State or Federal Constitutions, and dismissed the petition. The petitioner's motion to reconsider was denied, and this appeal followed.

II.     Analysis

On appeal, the petitioner argues that the trial court erred by ruling that the DMV did not violate his free speech rights under the State and Federal Constitutions. He contends that vanity registration plates constitute a "designated public forum" and that the DMV's denial of his vanity registration plate was not narrowly tailored to serve a legitimate or compelling government interest. In the alternative, he contends that, if vanity registration plates are a "nonpublic forum," the restrictions in Saf-C 514.61(c)(3) "are not viewpoint-neutral, for what one considers 'offensive' is fundamentally a matter of viewpoint." The petitioner also raises a facial challenge to Saf-C 514.61(c)(3) on the grounds that the regulation is unconstitutionally vague and overbroad.

We first address the petitioner's claims under our State Constitution, State v. Ball, 124 N.H. 226, 231-32 (1983), and rely upon federal law only to aid in our analysis, id. at 233. We review the constitutionality of state regulations de novo. See Doyle v. Comm'r, N.H. Dep't of Resources & Economic Dev., 163 N.H. 215, 220 (2012).

We begin by noting that, although in his brief the petitioner refers generally to Saf-C 514.61(c)(3), the trial court found that the petitioner's challenge was to the regulation prohibiting vanity registration plates "which a reasonable person would find offensive to good taste," and that the petitioner did not "squarely challenge the regulatory restriction of plates related to ethnicity or race." See N.H. Admin. Rules, Saf-C 514.61(c)(3). Since the petitioner has not appealed that finding, we confine our analysis to the language in the regulation prohibiting vanity registration plates "which a reasonable person would find offensive to good taste." See id.

A.     Forum Analysis

Part I, Article 22 of our State Constitution provides: "Free speech and liberty of the press are essential to the security of freedom in a state: They ought, therefore, to be inviolably preserved." N.H. CONST. pt. I, art. 22. Similarly, the First Amendment to the United States Constitution prevents the passage of laws "abridging the freedom of speech." U.S. CONST. amend I. It applies to the states through the Fourteenth Amendment to the United States Constitution. Lovell v. Griffin, 303 U.S. 444, 450 (1938).

The First Amendment's "Free Speech Clause restricts government regulation of private, not government, speech." Children First Foundation, Inc. v. Martinez, 829 F. Supp. 2d 47, 54 (N.D.N.Y. 2011). "It is well established that the government need not permit all forms of speech on property that it owns and controls." Perry v. McDonald, 280 F.3d 159, 166 (2d Cir. 2001) (quotation omitted). Here, because neither party has argued otherwise, we will assume, without deciding, that the speech at issue in this case is private speech and that vanity registration plates are government property.

"In evaluating government regulations concerning private individuals' speech on government-owned property, the Supreme Court has identified three categories of forums – the traditional public forum, the designated public forum, and the nonpublic forum and – has developed a body of law styled 'forum analysis.'" Id.; see also HippoPress v. SMG, 150 N.H. 304, 312 (2003). The parties do not dispute that vanity registration plates are not a traditional public forum. The petitioner argues that by enacting RSA 261:89 to allow for vanity registration plates, the State intended to create a designated public forum. Thus, he contends that any restrictions on the messages displayed on vanity registration plates must be narrowly tailored to serve a compelling government interest. See HippoPress, 150 N.H. at 312 (explaining that restrictions on speech in a designated public forum are subject to highest scrutiny and survive only if they are narrowly drawn to achieve a compelling state interest). The DMV disagrees, arguing that vanity registration plates constitute a nonpublic forum and therefore any restrictions need only be reasonable and viewpoint neutral. See id. at 312-13 (explaining that restrictions on speech in a nonpublic forum must be reasonable and not an effort to suppress expression based on the speaker's viewpoint).

We need not decide what type of forum a vanity registration plate is because we conclude that the challenged restriction in Saf-C 514.61(c)(3) is facially unconstitutional regardless of the forum. See Airport Comm'rs v. Jews for Jesus, Inc., 482 U.S. 569, 573-74 (1987); Lewis v. Wilson, 253 F.3d 1077, 1079 (8th Cir. 2001). Nonetheless, we express some skepticism about characterizing vanity registration plates as a designated public forum given that individuals must obtain permission in order to gain access to the forum, see RSA 261:89; N.H. Admin. Rules, Saf-C 514.61(c), (d). See Sons of Confederate v. Comm'r of Va Dept of Motor Vehicles, 288 F.3d 610, 622 n.10 (4th Cir. 2002) (explaining that in nonpublic forum "government reserve[s] eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, obtain permission to use" forum (quotations and ellipsis omitted)). Moreover, as the petitioner acknowledges, the primary function of vanity registration plates is to serve as a means of "vehicle identification," see RSA 259:85 (2004); N.H. Admin. Rules, Saf-C 514.61(c)(8). See Perry, 280 F.3d at 167 (determining that Vermont did not intend to create designated public forum when it established vanity license

4

plate regime, in part, because "stated policy in issuing license plates, including vanity plates, is to aid in vehicle identification").

###### B.     Facial Challenge

The petitioner argues that the restriction at issue in Saf-C 514.61(c)(3) is facially invalid because it is unconstitutionally vague and overbroad.  He maintains that "'[t]he offensive to good taste' standard . . . promulgated by [Saf-C 514.61(c)(3)] casts too wide a net, and encroaches on the realm of protected speech" and "is implemented by [the] DMV to mean 'any point of view with which the DMV disagrees.'"

The DMV argues preliminarily that the petitioner "improperly merges the concepts of vagueness and overbreadth" and that, in any event, the petitioner has not adequately briefed the vagueness issue.  The DMV therefore concludes that the vagueness issue should be deemed waived.  We disagree.  In his brief, the petitioner separately challenges the restriction at issue as both unconstitutionally vague and unconstitutionally overbroad, and has sufficiently briefed these issues for our review.  We, therefore, turn to the merits of the petitioner's arguments.

"In the First Amendment context, courts are especially concerned about overbroad and vague laws that may have a chilling effect on speech."  Act Now to Stop War v. District of Columbia, 905 F. Supp. 2d 317, 329 (D.D.C. 2012). "Courts are suspicious of broad prophylactic rules in the area of free expression, and therefore precision of regulation must be the touchstone in an area so closely touching our most precious freedoms."  Id. at 330 (quotation and brackets omitted).

"Although not identical, vagueness and overbreadth challenges in the First Amendment context are alternative and often overlapping grounds for the same relief, namely invalidation of the offending regulation."  Jordan v. Pugh, 425 F.3d 820, 827 (10th Cir. 2005); see also Kolender v. Lawson, 461 U.S. 352, 358 n.8 (1983) ("[W]e have traditionally viewed vagueness and overbreadth as logically related and similar doctrines."); Act Now to Stop War, 905 F. Supp. 2d at 330 ("The doctrines of substantial overbreadth and vagueness often overlap, and Courts frequently blend them together."); State v. Princess Cinema of Milwaukee, 292 N.W.2d 807, 813 (Wis. 1980) ("The problems of vagueness and overbreadth in statutes, although raising separate problems, often arise together.").  "The same evils are addressed, i.e., application of the statute's sanctions to protected activity and deterrence of others from engaging in similar conduct, and the same remedies are available, i.e., a narrowing interpretation or facial invalidation."  United States v. Lambert, 446 F. Supp. 890, 897 (D. Conn. 1978).  "As a result, some courts have made no attempt to distinguish the two doctrines when measuring a statute against the

requirements of the First Amendment." Id.; see, e.g., Forsyth County v. Nationalist Movement, 505 U.S. 123, 129-30 (1992) ("[A] party [may] challenge an ordinance under the overbreadth doctrine in cases where every application creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker, and in cases where the ordinance sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected." (citations omitted)); Cox v. Louisiana, 379 U.S. 536, 551 (1965) ("The statute at issue in this case . . . is unconstitutionally vague in its overly broad scope."); Jordan, 425 F.3d at 828 ("Overbreadth and vagueness may overlap when the challenged statute is so unclear in its scope that officials enforce it in an overbroad manner."). With this in mind, we address whether Saf-C 514.61(c)(3) is unconstitutional on its face.

The petitioner argues that the restriction in Saf-C 514.61(c)(3) is unconstitutionally vague because it is "so loosely constrained" that it "authorizes or even encourages arbitrary and discriminatory enforcement." (Quotation omitted.) We agree.

The vagueness doctrine, "originally a due process doctrine, applies when the statutory language is unclear, and is concerned with notice to the potential wrongdoer and prevention of arbitrary or discriminatory enforcement." Lambert, 446 F. Supp. at 897; see also State v. MacElman, 154 N.H. 304, 307 (2006) (explaining that vagueness may invalidate a statute for either of two independent reasons: (1) it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) it authorizes or even encourages arbitrary and discriminatory enforcement). "A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application." Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972). "The absence of clear standards guiding the discretion of the public official vested with the authority to enforce the enactment invites abuse by enabling the official to administer the policy on the basis of impermissible factors." United Food v. Southwest Ohio Regional Transit, 163 F.3d 341, 359 (6th Cir. 1998).

Thus, the vagueness doctrine serves to "[rein] in the discretion of enforcement officers." Act Now to Stop War, 905 F. Supp. 2d at 330. As the Supreme Court has stated, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." Grayned, 408 U.S. at 108. In particular, "where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms." Id. at 109 (quotations and brackets omitted). "Uncertain meanings inevitably lead citizens to steer far wider of the unlawful

6

zone than if the boundaries of the forbidden areas were clearly marked." Id. (quotation and ellipsis omitted).

We recognize that "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." United States v. Williams, 553 U.S. 285, 304 (2008) (quotation omitted). "Condemned to the use of words, we can never expect mathematical certainty from our language." Grayned, 408 U.S. at 110. Nonetheless, when First Amendment interests are at stake, "[c]ourts apply the vagueness doctrine with special exactitude." Act Now to Stop War, 905 F. Supp. 2d at 351. Thus, when a regulation, like Saf-C 514.61(c)(3), "requires that a speaker receive permission to engage in speech, the official charged with granting the permission must be provided specific standards on which to base his or her decisions." Lewis, 253 F.3d at 1080. "Without such standards, every application of the regulation creates an impermissible risk of suppression of ideas." Id. (quotation omitted). "[T]his principle applies with as much force to civil statutes as it does to criminal laws." Id.

When considering whether the challenged restriction in Saf-C 514.61(c)(3) is unconstitutionally vague, we begin with the language of the regulation. See Act Now to Stop War, 905 F. Supp. 2d at 347; cf. Appeal of Town of Nottingham, 153 N.H. 539, 546 (2006) ("The starting point in any statutory interpretation case is the language of the statute." (quotation omitted)). The challenged portion of the regulation prohibits vanity registration plates that "a reasonable person would find offensive to good taste." N.H. Admin. Rules, Saf-C 514.61(c)(3). The phrase "offensive to good taste" is not defined in the regulation. Further, to the extent the phrase could be construed to prohibit obscene material, we note that a separate provision in the regulation prohibits vanity registration plates that are "capable of an obscene interpretation." N.H. Admin. Rules, Saf-C 514.61(c)(2); cf. Winnacunnet Coop. Sch. Dist. v. Town of Seabrook, 148 N.H. 519, 525-26 (2002) ("When construing a statute, we must give effect to all words in a statute and presume that the legislature did not enact superfluous or redundant words."). To discern the meaning of "offensive to good taste," we will look to the plain and ordinary meaning of the words used. N.H. Residents Ltd. Partners of Lyme Timber Co. v. N.H. Dep't of Revenue Admin., 162 N.H. 98, 101 (2011) ("When construing statutes and administrative regulations, we first examine the language used, and, where possible, we ascribe the plain and ordinary meanings to words used.").

The word "offensive" means, in relevant part, "causing displeasure or resentment : giving offense : INSULTING, AFFRONTING." Webster's Third New International Dictionary 1566 (unabridged ed. 2002). As pertinent here, "good" is defined as "conforming to a certain ideal or standard of morality or virtue : wholly commendable : VIRTUOUS, PURE" and "conforming to some abstract

7

standard or ideal (as of prudent conduct or proper condition) : RIGHT, DESIRABLE, WISE." Id. at 978. "[G]ood" is also defined as "something that possesses desirable qualities, promotes success, welfare, or happiness, or is otherwise beneficial" and "something that satisfies or commends itself to the ethical consciousness or is conceived as fitting in the moral order of the universe." Id. Finally, "taste" is defined, in relevant part, as "individual preference : LIKING, RELISH, FONDNESS, INCLINATION." Id. at 2343. Taken together, these definitions lead to various potential interpretations of the phrase "offensive to good taste." For example, one such interpretation could be that no vanity registration plates are allowed that are "insulting to the standard of morality or virtue of individual preference." This reading alone demonstrates the arbitrariness of determining whether a vanity registration plate is "offensive to good taste."

We acknowledge that the phrase "offensive to good taste" is modified by the "reasonable person" standard. See N.H. Admin. Rules, Saf-C 514.61(c)(3). However, this modifier fails to provide sufficient guidance to DMV officials in determining which vanity registration plates shall be authorized. "Reasonable people frequently come to different conclusions." Act Now to Stop War, 905 F. Supp. 2d at 348; cf. Coates v. City of Cincinnati, 402 U.S. 611, 611, 614 (1971) (finding ordinance that made it a criminal offense for "three or more persons to assemble on any of the sidewalks and there conduct themselves in a manner annoying to persons passing by" unconstitutionally vague because "[c]onduct that annoys some people does not annoy others" (quotation and ellipsis omitted)). Indeed, speech that one reasonable person finds "offensive to good taste" may not be offensive to the good taste of another reasonable person. As the United States District Court for the District of Maine stated thirty years ago, "[f]ree public expression cannot be burdened with governmental predictions or assessments of what a discrete populace will think about good or bad 'taste.'" Stanton by Stanton v. Brunswick School Dept., 577 F. Supp. 1560, 1572, 1574 (D. Me. 1984) (concluding that prohibition of quotation in high school yearbook "on the basis of a standard of 'poor taste'" was vague and uncertain and did not pass constitutional muster). "If the intellectual and ideological ferment of the last four decades of the American social experience teaches anything, it teaches us that whatever may be the accepted meaning of 'good taste' on any given day, the content of that meaning does not rigidly abide through time." Id. at 1574. Because the "offensive to good taste" standard is not susceptible of objective definition, the restriction grants DMV officials the power to deny a proposed vanity registration plate because it offends particular officials' subjective idea of what is "good taste."

To the extent the DMV argues that its reasoning for denying the petitioner's requested vanity registration plate in this case aids in interpreting the phrase "offensive to good taste," we disagree. The DMV initially denied the petitioner's request because several DMV employees believed the text to be

"insulting." The DMV then argued that the phrase was applied "to exclude . . . accusation[s] of moral turpitude." We are not persuaded that these interpretations clarify or explain the meaning of "offensive to good taste" so as to render it constitutionally sufficient. Moreover, we question whether prohibition of accusations of moral turpitude would constitute "viewpoint-neutral" regulation. Regardless, in order to construe the phrase to avoid unfettered discretion in enforcement, we would have to add or delete text to the regulation. This we decline to do.

The DMV further maintains that "the concept of vagueness is inapplicable" in this case because the disputed language "is not a prohibition on the [petitioner's] conduct but rather a standard by which State employees are to discharge their duties." As explained above, a regulation may be invalidated as unconstitutionally vague when "it authorizes or even encourages arbitrary and discriminatory enforcement." MacElman, 154 N.H. at 307. The challenged restriction in Saf-C 514.61(c)(3) does just that. As a result, it is precisely the type of restriction that the vagueness doctrine serves to protect against. See Act Now to Stop War, 905 F. Supp. 2d at 330-31, 348; see also United Food, 163 F.3d at 360 (concluding that term "aesthetically pleasing" in authority's advertising policy "invites arbitrary or discriminatory enforcement"); cf. Penthouse Intern., Ltd. v. Koch, 599 F. Supp. 1338, 1351 (S.D.N.Y. 1984) (concluding that "offensive to good taste" language used to determine acceptability of advertisements in subway stations was "too vague and subjective to meaningfully circumscribe the discretion of subway officials").

III.    Conclusion

We conclude that the restriction in Saf-C 514.61(c)(3) prohibiting vanity registration plates that are "offensive to good taste" on its face "authorizes or even encourages arbitrary and discriminatory enforcement," see MacElman, 154 N.H. at 307, and is, therefore, unconstitutionally vague. Accordingly, we hold that, on its face, this restriction violates the right to free speech guaranteed by Part I, Article 22 of the State Constitution. In light of our decision, we need not address the petitioner's remaining arguments, including his arguments under the Federal Constitution. See Doyle, 163 N.H. at 228.

The New Hampshire Civil Liberties Union (NHCLU), as amicus curiae, has filed a motion for leave to file late authority, to which the petitioner assents. The DMV objects. Because our ruling today does not rely upon the authority cited by the NHCLU, we decline to rule upon the NHCLU's motion as it is moot.

Reversed and remanded.

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.