NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
Case No. 2023-0663
Citation: Attorney General v. Hood, 2025 N.H. 3

ATTORNEY GENERAL

v.

CHRISTOPHER HOOD & a.

Argued: June 27, 2024
Opinion Issued: January 10, 2025

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sean R. Locke, senior assistant attorney general, on the brief and orally), for the New Hampshire Attorney General.

Gens & Stanton, P.C., of Boston, Massachusetts (Bradford R. Stanton and William E. Gens on the brief, and William E. Gens orally), for the defendants.

American Civil Liberties Union of New Hampshire Foundation, of Concord (Gilles R. Bissonnette and Henry R. Klementowicz on the brief), and American Civil Liberties Union Foundation, of New York, New York (Brian

Hauss, Tyler Takemoto, and Ben Wizner on the brief), as amici curiae.

PER CURIAM.

[¶1] The New Hampshire Attorney General (the State) appeals a decision of the Superior Court (Ruoff, J.) dismissing its complaints under New Hampshire's Civil Rights Act (the Act), RSA chapter 354-B (2022), against the defendants, Christopher Hood, Leo Anthony Cullinan (now deceased), and Nationalist Social Club-131 (NSC-131). The State argues that the trial court erred in determining that, to avoid a construction of the Act that would be unconstitutionally overbroad or vague, the State must establish that the defendants trespassed or conspired to trespass knowingly. We conclude that the State's construction of the Act is unconstitutional and that the trial court properly limited its scope. We further conclude that the State failed to state a claim under the Act and affirm the order granting the defendants' motions to dismiss without prejudice.

## I. Facts

[¶2] The following facts are derived from the State's complaints and are assumed to be true for the purposes of this appeal. See Barufaldi v. City of Dover, 175 N.H. 424, 425 (2022). On July 30, 2022, a group of approximately ten people associated with NSC-131, an unincorporated association that describes itself, in part, as a "pro-white, street-oriented fraternity dedicated to raising authentic resistance to the enemies of [its] people in the New England area," gathered on a highway overpass in Portsmouth. The group hung banners, one of which read "KEEP NEW ENGLAND WHITE," from the overpass.

[¶3] Shortly thereafter, officers from the Portsmouth Police Department responded to the scene and informed Hood, whom they identified as the group's leader, that the group was violating a Portsmouth municipal ordinance that prohibited hanging banners from the overpass without a permit. Hood then instructed his associates to remove the banners from the overpass, although some individuals continued to display the banners by hand. The officers interacted with the group on the overpass for approximately twenty to twenty-five minutes before the group departed. NSC-131 subsequently took credit for the episode on social media.

[¶4] The State filed complaints against the defendants seeking civil penalties and injunctive relief for their alleged violation of RSA 354-B:1. The State alleged that Hood and Cullinan violated and/or conspired to violate the Act when they led or aided a group of individuals to trespass upon the property of the State of New Hampshire and the City of Portsmouth by hanging banners reading "Keep New England White" from the overpass without a permit because their conduct was "motivated by race and interfered with the lawful activities of

others." The State alleged that NSC-131 violated the Act when its members developed and executed a plan to commit the aforementioned act. Hood and Cullinan moved to dismiss the complaints against them. The State objected.

[¶5] Following a preliminary hearing, the trial court consolidated the three cases and subsequently issued an order dismissing the complaints against all three defendants. In its order, the trial court agreed with the State that, because the term "actual . . . trespass on property," RSA 354-B:1, I, is not defined in the Act, its definition must derive from the common law definition of civil trespass. The trial court then determined that although the State had sufficiently alleged that the defendants committed or conspired to commit an "actual . . . trespass on property" under a theory of common law trespass, the State's construction of the Act would be unconstitutionally overbroad in violation of the defendants' right to freedom of speech.[1] As a result, the court concluded that the State had failed to sufficiently state a claim for relief under the Act. The State moved for reconsideration, arguing in part that the trial court had failed to consider in its definition of common law trespass that an actor must enter upon the land of another without privilege or permission and that such limiting language renders the application of trespass to the Act constitutional and not overly broad.

[¶6] In October 2023, following another hearing, the trial court denied the State's motion for reconsideration. However, the court agreed with the State that, for a common law trespass to occur, entry onto the land must be unprivileged. Nevertheless, the court ruled that the statute remained unconstitutionally overbroad. The court explained that "the problem remains that the State's interpretation of the Civil Rights Act lacks limiting principles necessary to prevent an impermissible chill on free speech." It then reasoned that "the text of the Civil Rights Act is . . . susceptible to a narrower construction that an actor must 'knowingly' trespass or be aware that their presence is not privileged to constitute a 'trespass' for purposes of" RSA 354-B:1, I. The court concluded that "if a person only commits an actual trespass for purposes of the Civil Rights Act where the person, <u>knowing that they are not licensed or privileged [to] do so</u>, enters or remains in any place," the court's concerns regarding any chill the statute would have on free speech would be eliminated. Because it determined that the State failed to allege that the defendants knew they were not licensed or privileged to enter and remain on the overpass, the court concluded that the State had failed to state a claim for relief under the Act.

[¶7] In response, the State again moved for reconsideration, asserting that the court "depart[ed] from its reasoning in its [order on the motion to

---

[1] The court rejected the State's arguments that the defendants' conduct constitutes criminal trespass, see RSA 635:2, I; a violation of the Portsmouth City Ordinances; or unauthorized posting and advertising, see RSA 236:27.

dismiss] and raise[d] new issues that were neither addressed nor discussed in the pleading or at the August 9, 2023 hearing on the motion to reconsider." The court denied the motion, and this appeal followed within 30 days from the clerk's notice of decision on the State's first motion for reconsideration.

## II. Analysis

[¶8] When reviewing an order granting a motion to dismiss, we assume the truth of the facts as alleged in the plaintiff's pleadings and construe all reasonable inferences in the light most favorable to the plaintiff. Barufaldi, 175 N.H. at 427. The standard of review when considering a motion to dismiss is whether the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery. Id. This threshold inquiry involves testing the facts alleged in the pleadings against the applicable law. Id. We will uphold the granting of the motion to dismiss if the facts pled do not constitute a basis for legal relief. Id.

[¶9] As an initial matter, the parties disagree over the proper definition and scope of the term "trespass on property" as used in the Act. See RSA 354-B:1, I. Resolving this dispute requires us to engage in statutory interpretation, and we review the trial court's statutory interpretation de novo. See Hynes v. N.H. Democratic Party, 175 N.H. 781, 787 (2023). We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. We construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Id.

[¶10] This is our first occasion to address the scope and framework of the Act, which authorizes civil enforcement by the Attorney General, provides for injunctive relief, see RSA 354-B:2, :3, and supplements existing criminal statutes, see, e.g., RSA 631:4 (2016) (criminal threatening); RSA 635:2 (Supp. 2023) (criminal trespass); RSA 651:6, I(f) (Supp. 2023) (hate crimes sentencing enhancement). RSA 354-B:1 provides:

> I. All persons have the right to engage in lawful activities and to exercise and enjoy the rights secured by the United States and New Hampshire Constitutions and the laws of the United States and New Hampshire without being subject to actual or threatened physical force or violence against them or any other person or by actual or threatened damage to or trespass on property when such actual or threatened conduct is motivated by race, color, religion, national origin, ancestry, sexual orientation, sex, gender identity, or

4

disability. "Threatened physical force" and "threatened damage to or trespass on property" is a communication, by physical conduct or by declaration, of an intent to inflict harm on a person or a person's property by some unlawful act with a purpose to terrorize or coerce.

II. It shall be unlawful for any person to interfere or attempt to interfere with the rights secured by this chapter.

[¶11] The defendants assert that the Act's definition of "threatened damage to or trespass on property" applies to actual trespass. In their view, "trespass on property" for purposes of the Act is "a communication, by physical conduct or by declaration, of an intent to inflict harm on a person or a person's property by some unlawful act with a purpose to terrorize or coerce." (Emphases omitted.) The State, on the other hand, maintains that although the second sentence of RSA 354-B:1, I, defines "threatened physical force" and "threatened damage to or trespass on property," the Act does not define with greater particularity the scope of the term actual "trespass on property." We agree with the State. By the Act's plain language, the second sentence of RSA 354-B:1, I, pertains only to threatened physical force, threatened damage to property, and threatened trespass on property. See RSA 354-B:1, I. It does not apply to the actual variants of the conduct included within the Act's scope. See id.

[¶12] Having concluded that the plain language of the Act does not define trespass on property, we next turn to the proper definition of trespass as contemplated by the Act. The State contends that "[f]or an actor to commit a trespass, the actor, without permission, privilege, or authorization, must intentionally enter onto the property of another." We agree. "[U]nder the established law of this State a trespass must be an intentional invasion of the property of another." Moulton v. Groveton Papers Co., 112 N.H. 50, 54 (1972). "'One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally . . . enters land in the possession of the other, or causes a thing or a third person to do so.'" Case v. St. Mary's Bank, 164 N.H. 649, 658 (2013) (quoting Restatement (Second) of Torts § 158, at 277 (1965)).

[¶13] Here, the State alleged that the defendants "trespassed upon the property of the State of New Hampshire and the City of Portsmouth when [they and other individuals] displayed banners reading 'Keep New England White' from the overpass without a permit." In objecting to Hood's motion to dismiss, the State argued that "[t]he defendant displayed a banner upon the fencing—causing a thing to enter upon land in possession of another, without any prior authorization from city or state authorities." Because the State alleged that the defendants intentionally invaded the property of another, and because "[t]he

State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated," Greer v. Spock, 424 U.S. 828, 836 (1976), we conclude that the State's complaints sufficiently alleged a civil trespass.

[¶14] Nonetheless, we must next determine whether the State's proposed construction of the Act, applying the aforementioned definition of trespass, violates the defendants' constitutional rights to free speech. The defendants maintain that the State's construction of the Act "raises a host of constitutional free speech issues." The State disagrees and argues that the trial court erred "when it found that the State's interpretation and application of the Act was overbroad, vague, and violated the defendants' right to freedom of speech."

[¶15] We review questions of constitutional law de novo. State v. Hynes, 159 N.H. 187, 199 (2009). When reviewing a legislative act, we presume it to be constitutional and will not declare it invalid except upon inescapable grounds. Id. In other words, we will not rule that a statute is unconstitutional unless a clear and substantial conflict exists between it and the constitution. Id. at 200. We first address the defendants' claims under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

[¶16] Part I, Article 22 of our State Constitution provides: "Free speech and liberty of the press are essential to the security of freedom in a state: They ought, therefore, to be inviolably preserved." N.H. CONST. pt. I, art. 22. Similarly, the First Amendment to the United States Constitution prevents the passage of laws "abridging the freedom of speech." U.S. CONST. amend I. It applies to the states through the Fourteenth Amendment to the United States Constitution. Lovell v. Griffin, 303 U.S. 444, 450 (1938).

[¶17] In the First Amendment context, courts are particularly concerned about overbroad and vague laws that may have a chilling effect on speech. Montenegro v. N.H. Div. of Motor Vehicles, 166 N.H. 215, 220 (2014). Courts are suspicious of broad prophylactic rules in the area of free expression, and therefore precision of regulation must be the touchstone in an area so closely touching our most precious freedoms. Id. Although not identical, vagueness and overbreadth challenges in the First Amendment context are alternative and often overlapping grounds for the same relief, namely invalidation of the offending regulation. Id. at 221.

[¶18] The vagueness doctrine, which applies when the statutory language is unclear, is concerned with notice to the potential wrongdoer and prevention of arbitrary or discriminatory enforcement. Id.; see also State v. MacElman, 154 N.H. 304, 307 (2006) (explaining that vagueness may invalidate a statute for either of two independent reasons: (1) it fails to provide people of ordinary

6

intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) it authorizes or even encourages arbitrary and discriminatory enforcement). The absence of clear standards guiding the discretion of the public official vested with the authority to enforce the enactment invites abuse by enabling the official to administer the policy on the basis of impermissible factors. Montenegro, 166 N.H. at 222. Furthermore, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Id. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked. Id.

[¶19] The overbreadth doctrine protects those persons who, although their speech or conduct is constitutionally protected, may well refrain from exercising their rights for fear of criminal sanctions by a statute susceptible of application to protected expression. See Hynes, 159 N.H. at 202. In other words, a statute is void for overbreadth if it attempts to control conduct by means which invade areas of protected freedom. Id. "While the Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere, the application of the overbreadth doctrine is strong medicine to be employed only as a last resort." Id. (quotation omitted).

[¶20] The defendants contend that the State's interpretation of the Act is overbroad and would have a chilling effect on freedom of speech. To prevail, the defendants must establish: (1) that no set of circumstances exists under which the State's construction would be valid; or (2) that the State's construction of the Act is overbroad "in that 'a substantial number of its applications are unconstitutional, judged in relation to the [Act's] plainly legitimate sweep.'" Doyle v. Comm'r, N.H. Dep't of Resources & Economic Dev., 163 N.H. 215, 220-21 (2012) (quoting United States v. Stevens, 559 U.S. 460, 473 (2010)). To determine whether a substantial number of a statute's applications are unconstitutional, we must consider the applicable constitutional standard. See id. at 221. As the United States Supreme Court has explained, "the standards by which limitations on speech must be evaluated differ depending on the character of the property." Frisby v. Schultz, 487 U.S. 474, 479 (1988) (quotation omitted); see Doyle, 163 N.H. at 221.

[¶21] Thus, we must analyze the character of the government property at issue. Doyle, 163 N.H. at 221. Government property generally falls into three categories — traditional public forums, designated public forums, and limited public forums. Id. Here, the trial court correctly reasoned that because "application of the Civil Rights Act requires no consideration of the relevant forum or the nature of the underlying regulations as to that forum," it applies "with equal force in traditional public fora as it does in limited or nonpublic

fora." We agree with the trial court's assessment and proceed to the regulation at issue.

[¶22] Government regulation of speech is content-based if a law applies to a particular type of speech because of the topic discussed or the idea or message expressed. See State v. Lilley, 171 N.H. 766, 781 (2019). The State argues that the Act "does not become a content or viewpoint-based action because the State relies upon a defendant's speech." Rather, it maintains that "[c]onsidering an actor's motivation to assess whether that remedy may be warranted has no impact on the person's right to freedom of speech, even when proof of motivation relies upon evidence of the person's speech, because a person's motivation has always been a proper consideration." We disagree. The Act prohibits threatened and actual conduct only when "motivated by race, color, national origin, ancestry, sexual orientation, sex, gender identity, or disability." RSA 354-B:1, I. Thus, we agree with the trial court's assessment that "[b]ecause the Civil Rights Act's additional sanctions apply only where a speaker is 'motivated by race' or another protected characteristic, it is 'content-based' in that it 'applies to . . . particular speech because of the topic discussed or the idea or message expressed.'" (Quoting Reed v. Town of Gilbert, Ariz., 576 U.S. 155, 163 (2015).)

[¶23] Content-based restrictions must be narrowly tailored to serve a compelling government interest. Doyle, 163 N.H. at 221; Pleasant Grove City v. Summum, 555 U.S. 460, 469 (2009). The State asserts that the requirement that a trespass be unprivileged or otherwise unlawful functions as a limitation sufficient to prevent its construction of the Act from being unconstitutionally overbroad. We are not persuaded. The trial court determined, and we agree, that although "prohibiting or discouraging interference with the lawful rights of others by way of bias-motivated conduct (including actual trespass) is a compelling government interest," the State's construction of the Act "is overly broad and not narrowly tailored to that end because, so construed, the Civil Rights Act applies in numerous circumstances which have no relation to this interest."

[¶24] The following example used by the trial court illustrates this point.

> For example, a person's disability rights protest at Veteran's Park in Manchester continuing after 11 p.m. may violate the [ordinance imposing a curfew] at issue in [State v. Bailey, 166 N.H. 537 (2014)], even if the protestor held a good faith belief that the regulation began at midnight or that there was no such curfew. See 166 N.H. at 542. Under the broader construction of the Civil Rights Act, the protestor will have violated [the Act] through their unprivileged presence on public property motivated by 'disability,' provided the protestor sufficiently 'interferes' with the lawful rights of others in doing so.

8

Likewise, if the person were 'motivated by . . . sex' to be in Veteran's Park after 11 p.m. for reasons unrelated to any political protest, the person similarly will have violated the Civil Rights Act even if they were unaware of the curfew, provided there is a sufficient showing of 'interference.' See id.

Although regulation of the defendants' banners may serve the compelling government interests of preventing interference or attempted interference with the rights secured by the Act, this example demonstrates that it is not narrowly tailored to do so. See State v. Bailey, 166 N.H. 537, 545 (2014) ("[T]he validity of the regulation depends on the relation it bears to the overall problem the government seeks to correct, not on the extent to which it furthers the government's interests in an individual case." (quotation omitted)).

[¶25] The overbreadth of the State's construction of the Act creates an unacceptable risk of a chill on speech protected by Part I, Article 22 of our State Constitution. Cf. Doyle, 163 N.H. at 228 (concluding regulation that was "unconstitutional in a substantial number of its applications" was overbroad). As the trial court noted, "[t]he right to free speech forbids this result." See N.H. CONST. pt. I, art. 22. Specifically, the State's construction of the Act would impose government sanctions on those who unintentionally trespass on public property and whose presence is "motivated by" one of the characteristics enumerated in RSA 354-B:1, I. Such a broad sweep discourages the expression of certain messages for fear of government sanctions under the Act based on the content of the messages expressed. See Hynes, 159 N.H. at 202. Because the State's construction of the Act "attempts to control conduct by means which invade areas of protected freedom," we conclude that it is void for overbreadth. See id. (quotation omitted).

[¶26] Our conclusion is supported by considering the vagueness concerns raised by the trial court. As the trial court explained, "reading the trespass provision to include good faith, negligent trespass would fail to provide people of ordinary intelligence a reasonable opportunity to understand what conduct the Civil Rights Act prohibits." Furthermore, "[t]he absence of a 'knowing' mental state would charge the public with maintaining an actual, encyclopedic knowledge of a potentially limitless number of existing and future regulations governing all types of public fora on all government property before engaging in otherwise protected speech." We agree that such an expectation of citizens who enter public property is not reasonable.

[¶27] Given this conclusion, we must next determine whether the trial court's limiting construction sufficiently narrowed the Act's scope. See State v. Gubitosi, 157 N.H. 720, 727 (2008) ("If a statute is found to be substantially overbroad, the statute must be invalidated unless the court can supply a limiting construction or partial invalidation that narrows the scope of the

9

statute to constitutionally acceptable applications." (quotation omitted)). When narrowing a statute, "we try not to nullify more of a legislature's work than is necessary, for we know that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." Ayotte v. Planned Parenthood of Northern New Engl., 546 U.S. 320, 329 (2006) (quotation and brackets omitted). The "touchstone for any decision about remedy is legislative intent, for a court cannot use its remedial powers to circumvent the intent of the legislature." Id. at 330 (quotation omitted).

[¶28] The trial court imposed a mens rea requirement for trespass, explaining that "if a person only commits an actual trespass for purposes of the Civil Rights Act where the person, knowing that they are not licensed or privileged [to] do so, enters or remains in any place, this eliminates many of the concerns outlined above." The court explained that this narrower construction: (1) "eliminat[es] the vagueness concern as to the public's awareness of what conduct is prohibited"; (2) "limits the concern for arbitrary and discriminatory enforcement because it excludes" those "who have a good faith belief that they are engaging in lawful, protected speech but accidentally run afoul of a regulation of government property"; and (3) "confine[s] the government's regulation of speech under the Civil Rights Act to the permissible 'evidentiary use of speech to establish the elements of a crime or to prove motive or intent.'" (Quoting Wisconsin v. Mitchell, 508 U.S. 476, 489 (1993).)

[¶29] The State argues that the trial court's adoption of a "knowing" mental state "failed to follow the rule that its limiting construction nullify no more of the legislature's work than necessary" and that a "knowing mental state was unnecessary to protect the defendants' constitutional rights." As support for its argument, the State points to the United States Supreme Court's holding that the First Amendment requires proof that a defendant acted recklessly in true threat cases and that such a requirement "offers enough breathing space for protected speech, without sacrificing too many of the benefits of enforcing laws against true threats." Counterman v. Colorado, 600 U.S. 66, 78-82 (2023) (quotations omitted).

[¶30] We disagree that the trial court's construction nullifies the legislature's work or sacrifices the benefits of enforcing laws against true threats. Instead, we concur with the trial court's reasoning and accept its narrowing language. The "knowing" mens rea requirement narrows the scope of the Act to exclude negligent trespass without unduly restricting the Attorney General from enforcing the Act against those who interfere or attempt to interfere with the rights protected by RSA chapter 354-B. See RSA 354-B:1, II; RSA 354-B:2, I. We hold that, to state a claim for a violation of the Act predicated upon actual trespass on property, the State must establish that the actor, with knowledge that he or she is not licensed or privileged to do so, enters land in the possession of another or causes a thing or a third person to

do so, see Case, 164 N.H. at 658, and that the trespass was "motivated by race, color, religion, national origin, ancestry, sexual orientation, sex, gender identity, or disability." See RSA 354-B:1, I.

[¶31] This holding is narrow and applies only to violations of the Act based upon actual trespass on property. We have no occasion to opine as to the other variants of threatened or actual conduct within the Act's scope. See id. If the legislature disagrees with our interpretation, it is free to amend the statute as it sees fit within constitutional bounds. See Doe v. Comm'r, N.H. Dep't of Health & Human Servs., 174 N.H. 239, 261 (2021).

[¶32] Finally, having concluded that the trial court properly supplied a limiting construction, we consider whether the State's allegations are nonetheless "reasonably susceptible of a construction that would permit recovery." Barufaldi, 175 N.H. at 427. The State asserts that "even when read in conjunction with the . . . knowledge requirement," its complaints state "a viable claim against the defendants for a violation of the Act." Specifically, the State maintains that the complaints "alleged that the defendants took steps to conceal their identities, refused to identify themselves for police, attempted to conceal where they had parked, and other factual claims that would support the inference that the defendants knew their conduct was unlawful." Although on a motion to dismiss we construe all reasonable inferences in the light most favorable to the plaintiff, see id., we are not persuaded.

[¶33] The facts pled do not constitute a basis for legal relief under the narrower construction of the Act. See id. The complaint against Hood alleged that he was not wearing a mask, "stepped forward and spoke with the officers," and identified himself as the group's leader. NSC-131 allegedly "took credit for the display of the banners" on its social media profiles. Furthermore, the group removed the banners from the overpass fence when they were apprised that they were trespassing on public property, and "[s]ome of [NSC-131's] members stood on the overpass and continued to display the banners by hand." Even when construing all reasonable inferences in the light most favorable to the State, we are not persuaded that the complaints sufficiently allege that the defendants knowingly trespassed. See id.; RSA 354-B:1, I.

[¶34] In summary, we conclude that the trial court properly ruled that the State's complaints fail to state a claim against the defendants. Accordingly, we affirm the trial court's ruling without prejudice. See ERG, Inc. v. Barnes, 137 N.H. 186, 189-92 (1993).

Affirmed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

11